UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-20-CR-13-4 |
| AHMED MOSBAH NASSAR | § | |

### PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas, and Arthur R. Jones, Assistant United States Attorney, and the defendant, AHMED MOSBAH NASSAR, and the defendant's counsel, pursuant to Rules **11(c)(1)(A) and 11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1. The defendant agrees to plead guilty to Count Six of the Indictment. Count Six charges the defendant with **providing or possessing contraband in prison**, in violation of Title 18, United States Code, Sections 1791(a)(2), 1791(b)(3) and 2. The defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment or sentence either charged in the indictment or information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 1791(a)(2) and 1791(b)(3), is imprisonment for up to five (5) years and a fine of up to

1

250,000 dollars. Additionally, the defendant may receive a term of supervised release after imprisonment of up to three (3) years. Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then defendant may be imprisoned for up to two (2) years, without credit for time already served on the term of supervised release prior to such violation. Title 18, U.S.C. §§ 3559(a)(4) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Potential Immigration Consequences

4. The defendant understands if he/she is not a citizen of the United States, the defendant's plea of guilty to Count Six will result in a criminal conviction that could lead to the defendant's subsequent deportation, removal and/or exclusion from the United States. This conviction could also lead to the defendant being permanently barred from legally entering the United States after being deported or removed. In addition, the defendant's attorney has advised the defendant of the potential immigration consequences that could come about as a result of the defendant's plea of guilty to Count Six. After understanding the potential immigration consequences of pleading guilty to Count Six, the defendant still wishes to plead guilty as detailed in this plea agreement.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentence Guidelines. The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should the defendant's cooperation, if any, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines Manual. This plea agreement does not require the defendant to cooperate, but should the defendant wish to do so the defendant agrees to persist in his/her guilty plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets as contemplated below in this agreement. The defendant understands and agrees that the United States may request that sentencing be deferred until any cooperation the defendant may provide is complete.

6. The defendant understands and agrees that "fully cooperate" as used herein, includes providing all information relating to any criminal activity known to defendant, including, but not limited to, any other individuals involved in drug trafficking in violation of the Controlled Substances Act or drug trafficking-related money laundering. The defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

    (b)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

3

(c) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney can and will be prosecuted under the appropriate perjury, false statement or obstruction statutes;

(d) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation.

(e) Should the recommended departure, if any, not meet the defendant's expectations, the defendant understands he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the

4

United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10. The United States agrees if defendant pleads guilty to Count Six of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss the remaining counts of the Indictment pending against the defendant at the time of sentencing.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a); and,

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be

6

        conducted by a judge sitting without a jury if the defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against the defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, the defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court.

(c)    At a trial, the defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if the defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he/she <u>is</u> guilty of the charges contained in Count Six of the Indictment. If this case were to proceed to trial, the United States could prove each element of this offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's guilt:

    a. In the late summer of 2019, agents from the Department of Homeland Security-Office of the Inspector General (DHS-OIG) received information that inmates being held in immigration detention at the Montgomery Processing Center (MPC) immigration detention facility in Conroe, Texas were smuggling contraband into the facility. The MPC is considered a "prison" as defined by 18 U.S.C. § 1791(d)(4). The MPC is a federal immigration detention facility operated by the GEO Group, Inc., where immigrants with no legal status to be in the United States are detained primarily pending deportation or the resolution of immigration cases they may have pending. The inmates at MPC are being held in custody by

direction of the Attorney General and pursuant to a contract with the Attorney General.

b. The investigation revealed that at least two inmates were involved in the scheme, and that a guard employed at the MPC (co-defendant Fred Edward Washington) would pick up the contraband from a civilian female (co-defendant Kenesha Steele) in Conroe and bring it into the MPC when he came in on his shift, and then subsequently distribute the contraband to the inmates (defendants Sebastian Fleurisaint and Ahmed Mosbah Nassar, among potentially others).

c. On September 2, 2019, agents learned of a contraband smuggling event, planned for September 3, 2019, at the MPC, after MPC facility officials had listened to a series of recorded telephone calls Fleurisaint made from the MPC. Recorded calls between Fleurisaint and Kenesha Steele, a civilian who lived in the local area, discussed plans for Steele to obtain contraband items outside the MPC, package them, and then give them to Fred Edward Washington at a location in the local area. Subsequent calls revealed the meeting would occur later in the day after Washington got off work.

d. At the time, Washington was a guard for the GEO Group, Inc. assigned to the MPC, and his job title was Janitorial Officer. In this capacity he essentially worked as a janitor at the MPC, and in doing so he supervised a cleaning crew that

was primarily comprised of MPC inmates. He started working for GEO and the MPC in approximately September 2018. During the summer and fall of 2019 Washington normally worked a night shift and would start work at approximately 2:00 a.m. each day. Washington's status at the MPC, as well as his nighttime work hours, allowed him to easily bring contraband into the MPC if he chose to do so. Washington is considered a "public official" within the meaning of 18 U.S.C. § 201, as he is considered a person acting for or on behalf of the United States, or any department, agency or branch of government thereof, in any official function, under or by authority of any such department, agency or branch of government.

e. The MPC has a Detainee Handbook that defines what constitutes "contraband" and states such contraband is prohibited from being introduced into, or possessed in, the MPC. Among other things, all illegal drugs are considered contraband. All inmates and MPC employees are required to be aware of what is contained in the MPC's Detainee Handbook and abide by its regulations.

f. On September 3, 2019, agents set up surveillance at the MPC to observe Washington arrive. Agents observed his arrival in the early morning hours of September 4, 2019. Washington entered the MPC lobby, passed through a security checkpoint scanner, and entered a safety vestibule adjacent to a facility control room where he was intercepted by government agents.

g. At the time, Washington was in possession of a beverage cup and a large bag from a McDonald's restaurant. The bag contained a large manila envelope rolled into a cylindrical shape. The envelope contained a pornographic magazine, cigarettes, balloons containing what appears to be marijuana, and pills of what appeared to be the drug ecstasy (chemically represented as 3,4 methylenedioxymethamphetamine or MDMA) which field-tested positive for the presence of methamphetamine. Agents seized these items, and the suspected drugs were forensically analyzed at a government laboratory. This forensic testing later revealed the suspected marijuana was in fact marijuana, and the suspected ecstasy pills contained detectable amounts of methamphetamine.

h. Agents then interviewed Washington, and he admitted to meeting Steele on September 3, 2019, to receive payment of $150-$200 and the package. Washington stated this instance was the 4th or 5th time he had brought contraband into the MPC.

i. Washington then explained the smuggling operation to agents. After entering the MPC, he would go to a cleaning closet in Zone 3 of the MPC and place the package on a cleaning cart. He would pull detainees for a cleaning crew shift, of which defendant Ahmed Mosbah Nassar was a member for several months. Washington would inform Nassar the package was on the cart. Nassar would remove the package sometime during the shift, in order to transport in into the

housing unit. Nassar would return to his/her housing unit, which is the same housing unit Fleurisaint was in, and give the contraband to Fleurisaint.

j. Government agents have also listened to a series of recorded calls between Fleurisaint and Steele made from the MPC facility during the summer and fall of 2019. During these calls, Fleurisaint and Steele discussed an operation designed to smuggle contraband items, referred to as the "Burrito," packaged by Steele, into the MPC facility, via an MPC guard (Washington) whom they referred to as the "Cab Driver." Nassar would complete the smuggling operation by receiving the contraband and smuggling it into the housing unit where both he and Fleurisaint were being held. These calls were consistent with what Washington was caught doing on September 3, 2019, and also with the statements Washington made to agents after he was caught.

k. Had Washington successfully brought the contraband into the MPC on September 3, 2019, he would have delivered it, to include the marijuana, to Ahmed Mosbah Nassar, who was attempting to possess it in the MPC on or about that date. Defendant Nassar also knew that the contraband, to include this marijuana, was prohibited in the MPC and that he was also prohibited from possessing it in the MPC.

## Breach of Plea Agreement

15. If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

21. This plea agreement is being entered into by the United States on the basis of defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest, including any assets listed that may be listed in the Indictment.

22. Defendant consents to any agreed order of forfeiture or judgment, and further agrees to take all steps necessary to pass clear title to forfeitable assets to the United States, including, but not limited to, surrendering of title, signing a consent decree, stipulating facts regarding the transfer of title and basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of defendant's assets to

deliver all funds and records of such assets to the United States.

## Complete Agreement

23. This written plea agreement, consisting of 16 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant and his/her counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

24. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____April 5_____, 2021.

_____
AHMED MOSBAH NASSAR
Defendant

Subscribed and sworn to before me on _____April 5_____, 2021.

NATHAN OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY

By: /s/ Arthur R. Jones
ARTHUR R. JONES
Assistant United States Attorney

_____
JOEL HUNTER BENNETT
Attorney for Defendant

14

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-20-CR-13-4 |
| AHMED MOSBAH NASSAR | § | |

**PLEA AGREEMENT - ADDENDUM**

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          2/4/2021
JOEL HUNTER BENNETT                Date
Defense Counsel

15

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____         2-4-2021
AHMED MOSBAH NASSAR             Date
Defendant